IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA SANTIAGO, for her minor child, C.S. | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 3354 |
| v. | ) ) | Magistrate Judge Michael T. Mason |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Maria Santiago, on behalf of her son C.S. ("Claimant"), brings this motion for summary judgment under 42 U.S.C. § 405(g). Ms. Santiago seeks review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her son's claims for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. § 1382c(a)(3)(A). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Claimant's request for summary judgment [dkt. 21] is granted and the Commissioner's cross-motion for summary judgment [dkt. 28] is denied.

**I.    BACKGROUND**

**A.    PROCEDURAL HISTORY**

On July 5, 2011, Maria Santiago filed an application for SSI on behalf of her minor child, C.S., alleging disability as of July 1, 2008 due to scoliosis. (R. 140.) The claim was denied initially on August 22, 2011, and upon reconsideration on December 23, 2011. (R. 57-58.) On December 30, 2011, Claimant requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on October 17, 2012. (R. 37-56.) At that hearing, Claimant appeared with Ms. Santiago and was represented by counsel. (*Id.*) Ms. Santiago testified on her son's behalf. (*Id.*) On November 5, 2012, the ALJ issued an unfavorable written decision. (17-32.) Claimant filed a timely request for review with the Appeal's Council, which was denied on March 19, 2014. (R. 1-6.) This action followed.

### B.     MEDICAL HISTORY

#### 1.     Treating Physicians and School Records

Claimant was born on March 30, 2008. (R. 57.) On December 26, 2008, he was admitted to St. Alexius Medical Center and was diagnosed with scoliosis. (R. 241.) In 2009, Claimant was referred by his primary care physician for evaluation of his spine abnormality to the Division of Pediatric Orthopedic Surgery at Children's Memorial Hospital. (R. 238-39.) A June 20, 2009 MRI revealed s-shaped scoliosis of the thoracolumbar spine, cervicothoracic syringohydromyelia, and small lipoma of the filum terminale. (R. 236-37.) Claimant was ultimately diagnosed with a tethered spinal cord, infantile scoliosis, and torticollis. (R. 235, 239, 303, 307, 310.)

On August 14, 2009, Claimant underwent surgery for a tethered spinal cord release. (R. 317-19.) He was recovering well at his initial follow-up appointments, though his doctors planned to follow the curvature of his spine closely. (R. 310.) Ultimately, it was determined that his scoliosis was progressively worsening and brace treatment was recommended. (R. 430.)

In May of 2010, Claimant was fitted with a low-profile thoraco-lumbar-sacral brace, and was ordered to wear it twenty-three hours per day. (R. 437, 445.) Eight

months later, in January of 2011, Claimant was fitted with a high-profile brace. (R. 520.) According to school records, the brace impacted his movement and he had trouble bending at his waist, and climbing stairs. (R. 667, 690-91.)

Claimant, who speaks both English and Spanish, also suffers from speech and language impairments. (R. 687-90, 693.) Claimant's speech was initially evaluated at ICG Rehab Services on January 20, 2010, at which time "he demonstrated low average receptive and expressive language development." (R. 710.) He had a nineteen percent expressive delay and a twenty-nine percent receptive delay. (R. 711.) He was re-assessed in July of 2010. (R. 710.) At that point he had shown progress and exhibited a fifteen percent expressive delay and a nineteen percent receptive delay. (*Id.*) No therapy was recommended and his Early Intervention therapy had been discontinued due to his progress. (*Id.*)

On February 7, 2011, Claimant was re-assessed by Dr. Hoolsema at ICG Rehab Services as part of his transition to school-based services. (R. 710-12.) At that time, Claimant had a nine percent expressive delay and zero percent receptive delay. (R. 711.) With respect to Claimant's receptive language skills, Dr. Hoolsema opined that he was demonstrating normally developing receptive language skills and that he could follow one-step commands and unrelated two-step commands. (*Id.*) He could identify many different body parts, identify pictures of objects and actions in books, and was working on learning basic concepts such as those related to color, position, shape, and size. (*Id.*) As for expressive language skills, Dr. Hoolsema reported that Claimant was demonstrating normal development. (*Id.*) He could say more words than his mom could count, regularly speaks in three to four word phrases, and sometimes longer

3

phrases. (*Id.*) Claimant was able to express his needs effectively with words and his mom could understand most of what he said, although his speech was not perfectly clear. (*Id.*) He could answer and ask questions. (R. 711-12.)

In October 2011, Claimant's pre-school teacher completed a teacher questionnaire for the SSA after teaching him for two and a half hours a day for the previous seven weeks. (R. 180-87.) In her opinion, Claimant exhibited "a slight problem" in a number of activities across the various domains. (R. 181-85.) She observed "an obvious problem" in his ability to organize his materials for school, complete assignments, work at a reasonable pace, relate experiences, and use adequate vocabulary and grammar. (R. 182-83.) She identified a serious problem in his ability to move his body from one place to another. (R. 184.) With respect to Claimant's speech, his teacher could understand him on the first attempt no more than half of the time when the topic of conversation was known, and very little when the topic of conversation was unknown. (*Id.*) With repetition and rephrasing, she could understand him still only one-half to two-thirds of the time. (*Id.*)

Also in October 2011, Claimant had another speech language evaluation, in connection with his initial individualized education program ("IEP"). (R. 810.) His total language score was in the 3rd percentile, within the moderately low range. (*Id.*) It was determined that he met the eligibility for a speech or language impairment. (R. 806-07, 814.) Claimant's IEP included instructions that he be provided speech and language services for his impairment during the 2011-2012 school year. (R. 797.)

    **2.**    **Agency Consultants**

In August 2011, Dr. Lenore Gonzalez completed a Childhood Disability Form on behalf of the Social Security Administration. (R. 600-05.) Dr. Gonzalez concluded that Claimant had marked limitations in the Health and Physical Well-Being domain, and less than marked limitations in the Moving About and Manipulating Objects domain as a result of his scoliosis. (R. 603.) He did not find limitations in any other domains. (R. 602-03.) At the time of Dr. Gonzalez's review, the file did not appear to include records related to Claimant's language and speech impairment. (*See* R. 659.)

In December of 2011, Dr. Cosme Cagas and speech pathologist Diane Lowry completed a Childhood Disability Form at the reconsideration level. (R. 654-59.) Dr. Cagas and Ms. Lowry concluded that Claimant had a marked limitation in the Interacting and Relating with Others domain. (R. 656.) They recognized that upon previous testing, he was 50% intelligible in single words and that his teacher reported that "very little" of his speech was understood outside of a known context. (R. 184, 656.) Strangely, despite the previous conclusion by Dr. Gonzalez, Dr. Cagas and Ms. Lowry found that Claimant had less than marked limitations in the Health and Physical Well-Being domain. (R. 657.) Further, although Dr. Cagas and Ms. Lowry found marked limitations in only one domain, they checked the box indicating that Claimant functionally equaled the Listings, that is, that he did in fact have marked limitations in two domains. (R. 654.)

### C. HEARING TESTIMONY

At the October 17, 2012 administrative hearing, Ms. Santiago testified on behalf of her son. (R. 37-56.) According to Ms. Santiago, Claimant was disabled because he tends to fall a lot while running and climbing stairs due to his scoliosis. (*Id.*) At the time

5

of the hearing, Claimant was four years old and was attending preschool. (R. 40-41.) Ms. Santiago testified that she had enrolled Claimant in the Early Intervention program due to his speech impairments and developmental therapy. (R. 42.)

Ms. Santiago explained that Claimant had surgery on August 14, 2010 for his tethered spinal cord, which was followed by brace treatment at age two. (R. 43-44.) Claimant often complains that the brace is uncomfortable and cries for his mother to take it off. (R. 44.) His shorter brace makes it easier for him to climb stairs, though he still has to take one step at a time. (R. 44-43.) His brace also makes it difficult to breathe because it is close to his chest, and it can cause him discomfort while sitting. (R. 54.) Claimant wears the brace at all times except for when he is bathing or in gym class. (R. 44-45.) His doctor wrote him a note allowing him to participate in gym class without his brace. (R. 45-46.) As for his falls, Ms. Santiago testified that Claimant falls "a lot" when walking, running, climbing stairs, or on uneven surfaces. (R. 45, 52-53.) She tries to limit his running to avoid falls. (R. 48.) Claimant also has trouble closing scissors and picking up objects, such as a backpack. (R. 51-52.)

Claimant sees his physician every six months for follow-up on his spinal cord. (R. 50-51.) There has been no improvement in the curve in Claimant's back, but it has not increased. (R. 46.) Ms. Santiago has been told that if Claimant does not wear the brace, his curvature will increase. (R. 53.)

Claimant can speak both English and Spanish. (R. 47.) At the time of the hearing, Claimant was still attending speech therapy once per week during school. (R. 49.) His mother said his speech had improved with therapy, but she still does not understand what he is saying "most of the time." (R. 46.) He often has to repeat

6

himself so that she can understand him. (R. 46-47.) Other family members also have difficulty understanding Claimant. (R. 47.) Claimant's teacher told Mrs. Santiago that his speech was improving. (*Id.*)

Claimant also suffered from reactive airway disease as an infant. (R. 42.) He continues to take Albuterol as needed, which is approximately once per month. (*Id.*) Claimant last used his nebulizer around three or four weeks prior to the hearing, when his mother took him to the hospital for breathing problems. (R. 43.) He also takes Flovent for asthma. (R. 49.)

## II. ANALYSIS

### A. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate

7

discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

B.   **SEQUENTIAL ANALYSIS**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. A child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924. First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 CFR pt. 404, subpt. P, App. 1. *Id.*

8

To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). The ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. 20 C.F.R. § 416.926a(d). An "extreme" limitation occurs when the impairment interferes very seriously with claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).

Here, the ALJ here found that: (1) claimant was a preschooler on July 5, 2011, the date the application was filed, and is currently a preschooler; (2) claimant has not engaged in substantial gainful activity since the application date; (3) claimant suffers from the severe impairments of reactive airway disease, status post tethered spinal cord release, scoliosis, and speech delay; (4) claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1; (5) claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings; and (6) claimant has not been disabled, as defined in the Social Security Act, since the date the application was filed. (R. 20-32.)

Claimant argues that the ALJ made two errors. First, Claimant argues that the ALJ's functional equivalency assessment was plagued by incomplete analysis and

9

legally improper evaluation of the evidence. Second, Claimant contends that the ALJ's credibility analysis was legally insufficient. As explained in more detail below, the Court finds that the ALJ's assessment of the Interacting and Relating to Others domain was not supported by substantial evidence.

### A. The ALJ Failed to Properly Assess Claimant's Limitations in the Interacting and Relating to Others Domain.

In finding that Claimant had less than marked limitations in the Interacting and Relating to Others domain, the ALJ relied on the February 2007 report from Dr. Hoolsema and the other reports from ICG, which demonstrated improvement in claimant's speech. The ALJ rejected the opinion of the consulting speech pathologist Ms. Lowry (who found marked impairments), because according to the ALJ, "once speech services were provided, significant improvement occurred." (R. 28.) The Claimant now argues that the ALJ improperly rejected the opinion of the agency consultant and ignored evidence in the record on this issue. We agree.

Under the Interacting and Relating with Others domain, the SSA considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. 416.926a(i). In addition, "because communication is essential to both interacting and relating," the ALJ will consider "the speech and language skills children need to speak intelligibly and to understand and use the language of their community." SSR 09-5P (S.S.A.), 2009 WL 396026, *2 (Feb. 17, 2009).

Concerning here is the ALJ's quick dismissal of the SSA's own consulting physician's opinion that Claimant had marked limitations in this domain. Again, the ALJ

10

seemed to reject this opinion simply because an earlier report demonstrated improvement with speech therapy. While the record certainly demonstrates improvement, the ALJ ignored portions of the report from Claimant's teacher, the testimony of his mother, and his continued need for speech therapy under his IEP.

For example, in October of 2011, Claimant's teacher indicated that she could understand, on the first attempt, no more than half of what he says when the topic of conversation is known and very little when the topic of conversation is unknown. Even after repetition or rephrasing, Claimant's teacher could understand only one-half to two-thirds of his speech. Claimant's mother, who acknowledged some improvement with therapy, still had difficulty understanding him "most of the time." (R. 46.) What is more, subsequent to the reports from ICG, Claimant's IEP included a requirement that he continue to undergo speech therapy once a week as he continued to experience delays. In light of this evidence, and as Claimant suggests, any improvements in speech might not have been as significant as the ALJ opined they were. Unfortunately, the ALJ failed to discuss this evidence and abruptly rejected the opinion of the agency consultant. While an ALJ need not mention every snippet of evidence in the record, she must connect the evidence to the conclusion; in so doing, she may not ignore entire lines of contrary evidence. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

Additionally, the Commissioner contends that the ALJ reasonably rejected Ms. Lowry's opinion because Dr. Hoolsema's ICG report was not part of the record that was reviewed by Ms. Lowry. But in doing so, the Commissioner violated the *Chenery* doctrine, which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63

S.Ct. 454, 87 L.Ed. 626 (1943). Here, the ALJ never mentioned that she was rejecting Ms. Lowry's opinion because it was formed without reviewing Dr. Hoolsema's February 7, 2011 report. As such, the Commissioner may not raise or rely on this argument.

On the whole, the Court concludes that the ALJ's conclusion on this issue is not supported by substantial evidence and remand is required to re-assess Claimant's limitations in the Interacting and Relating to Others domain. In light of this decision to remand, we need not comment further on the Claimant's remaining arguments. We do note, however, that the ALJ's credibility analysis is lacking. Unlike the Commissioner, we fail to see how the analysis was incorporated into the functional equivalence assessment. On remand, the ALJ should take care to articulate any credibility assessment.

## IV. CONCLUSION

For the reasons stated above, Claimant's request for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: March 15, 2016**